CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/7/2021
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 6:20-cr-00006 |
| ) | |
| DUANE DIXON ) | |

**MEMORANDUM OPINION**

Pending before the court are the government's motion to exclude time under the Speedy Trial Act (Dkt. No. 33), motion to dismiss without prejudice (Dkt. No. 35), and second motion to exclude time under the Speedy Trial Act (Dkt. No. 49). In addition, Duane Dixon has filed a motion to dismiss with prejudice (Dkt. No. 36) and a motion for disclosure of government information (Dkt. No. 65). These matters have been fully briefed, the court has held a hearing on the motions. For the reasons stated below, the court will grant the government's motion to dismiss without prejudice, deny Dr. Dixon's motion to dismiss with prejudice, deny the government's first motion to exclude speedy trial time, grant the government's second motion to exclude speedy trial time, and deny Dr. Dixon's motion for disclosure of government information.

I. BACKGROUND

In November 2015, the government began investigating Duane Dixon, a medical doctor practicing in Lynchburg, Virginia. (Dkt. No. 5 at 4.) The government initiated the investigation after receiving information from local pharmacists that Dr. Dixon was prescribing unusually large amounts of narcotics. (*Id.*)

On May 12, 2020, the government filed a two-count information against Dr. Dixon. (Dkt. No. 1.) The information alleges that in May 2015, Dr. Dixon issued a prescription for fentanyl and oxycodone to a patient, without a legitimate medical purpose and beyond the bounds of medical

1

practice. (*Id.*) Further, the use of these prescriptions resulted in the patient's death. (*Id.*) On June 12, 2020, Dr. Dixon made an initial appearance before the court and was placed on bond. (Dkt. No. 14.)

On July 2, 2020, Dr. Dixon filed his first motion to dismiss the information, arguing that the prosecution was barred by the statute of limitations. (Dkt. No. 26 at 1.) In addition, Dr. Dixon and the government filed a joint motion to exclude from the Speedy Trial Act calculations the time between July 2, 2020, and the disposition of Dr. Dixon's the motion to dismiss. (Dkt. No. 27.) The court granted the motion to exclude time. (Dkt. No. 29.)

The court held a hearing on Dr. Dixon's first motion to dismiss on September 16, 2020, but the motion remained under advisement until the court's decision on October 26, 2020. Thirty days after the hearing on the motion, on October 16, 2020, the government moved for an exclusion of speedy trial time. (Dkt. No. 33 at 1.) The government explained that the court's prior order (Dkt. No. 29) only excluded time until "hearing on or prompt disposition of the motion [to dismiss]." (*Id.* at 1.) The government filed its second motion to ensure that the time excluded from speedy trial calculations would include all time after the hearing until the disposition of the motion to dismiss and not just thirty days. (*Id.*)

On October 26, 2020, the court denied Dr. Dixon's motion to dismiss on statute of limitations grounds. (Dkt. No. 34.) The same day, the government filed a motion to dismiss without prejudice "because the parties, notwithstanding efforts, ha[d] not reached any agreement whereby Defendant [was] willing to consent to a jury trial or guilty plea [] in the absence of an indictment" and defendant had not been indicted. (Dkt. No. 35.) On November 2, 2020, Dr. Dixon filed another motion to dismiss, this time seeking dismissal with prejudice pursuant to the Fifth and Sixth Amendments of the United States Constitution, Federal Rule of Criminal Procedure 48(b),

and the Speedy Trial Act. (Dkt. No. 36.) Briefing followed and, on January 26, 2021, the court held a hearing on the pending motions, but it did not issue a decision. (Dkt. No. 45.)

On February 25, 2021, the court held a telephonic hearing to discuss a potential conflict of interest involving the court. (Dkt. No. 46.) Judge Moon, then presiding over the case, learned of ongoing grand jury information through a conversation with one of his family members. (Dkt. No. 55 at 3.) Judge Moon explained that he did not believe this to create a conflict in the instant case, but the government sought to have the hearing about this potential conflict on an ex parte basis. (*Id.* at 4–6.) Dr. Dixon and his counsel were and remain unaware of the subject matter of the potential conflict. (Dkt. No. 65 at 7.)

Shortly after the telephonic hearing and before Judge Moon issued a decision on the pending motions, the court reassigned the case to the undersigned. (Dkt. No. 47.) The government then filed another motion to exclude speedy trial time until the resolution of the pending motions. (Dkt. No. 49.) Dr. Dixon filed a response opposing the new motion to exclude speedy trial time and a motion seeking disclosure of government information. (Dkt. No. 65.) Dr. Dixon argues that he "is entitled to know the subject matter of the information which was the subject of the discussion between the Government and Judge Moon during the hearing on February 25, 2021." (Dkt. No. 65 at 10.) The government opposes disclosure of this information which pertains to an ongoing grand jury matter. (Dkt. No. 69.)

On February 26, 2021, the court held a status conference and set a hearing on the pending motions, which was continued until after briefing. (Dkt. Nos. 50, 54, 66, 68.) On April 7, 2021, the undersigned held a hearing on the pending motions, which are now ripe for resolution.

## II. DISCUSSION

**A. Motions to Dismiss**

Pursuant to Federal Rule of Criminal Procedure 48(a), "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." In addition, "[t]court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . presenting a charge to a grand jury." Fed. R. Crim. P. 48(b). Here, both parties seek to dismiss the case under Rule 48 due to the lack of an indictment. However, the parties dispute whether the case should be dismissed with or without prejudice. Dr. Dixon argues that the case should be dismissed with prejudice due to: (1) his rights under the Fifth Amendment Due Process Clause of the United States Constitution; (2) the broad discretion of the court under Rule 48(b); and (3) his rights to a speedy trial. The government argues that the case should be dismissed without prejudice under Rule 48(a). For reasons stated below, Dr. Dixon has failed to show actual prejudice that warrants dismissal with prejudice. Therefore, the court will deny Dr. Dixon's motion to dismiss with prejudice and grant the government's motion to dismiss without prejudice.

**1. The Fifth Amendment**

The Fifth Amendment of the United States Constitution provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." The Supreme Court has held that the Fifth Amendment "would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to [defendant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324 (1971). The Fourth Circuit applies "a two-pronged inquiry to evaluate a defendant's claim that pre-indictment delay violated his right to due process." *United States v. Uribe-Rios*, 558 F.3d 347, 358

(4th Cir. 2009) (citing *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 403 (4th Cir. 1985)). First, the court evaluates "whether the defendant has satisfied his burden of proving 'actual prejudice.'" *Id.* "Second, if that threshold requirement is met, [the court] consider[s] the government's reasons for the delay, 'balancing the prejudice to the defendant with the Government's justification for delay.'" *Id.* (citing *Automated Med. Labs., Inc.*, 770 F.2d at 404).

"[T]he burden of proving [actual] prejudice is clearly on the defendant." *Automated Med. Labs., Inc.*, 770 F.2d at 403. "This is a heavy burden because it requires not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, but also that he show that any actual prejudice was substantial—that he was meaningfully impaired in his ability to defend against the state's charges to such an extent that the disposition of the criminal proceeding was likely affected." *United States v. Shealey*, 641 F.3d 627, 634 (4th Cir. 2011) (quoting *Jones v. Angelone*, 94 F.3d 900, 907 (4th Cir. 1996)).

Here, Dr. Dixon fails to meet his burden to prove actual prejudice. Dr. Dixon does not describe any specific examples of prejudice he has suffered from the delay in indictment; instead, he speaks generally to the "loss of memory on the part of the various witnesses involved, the potential for the loss of significant evidence, and difficulty in locating witnesses who may no longer even be in the area." (Dkt. No. 36 at 5.) At this time, there is no evidence of any witnesses who cannot be located, any witnesses who cannot remember, or any evidence that is now lost. Rather, these allegations of prejudice are speculative. Even if such prejudice did exist, there has been no showing of substantial prejudice that would meaningfully impair Dr. Dixon's defense. In addition, Dr. Dixon argues that the "unavailability of patient records after the passage of five years makes it quite difficult for [him] to establish his good faith defense and demonstrate that prescriptions were written within the standards of medical practice." (Dkt. No. 41 at 2.) However, the government

explains that Dr. Dixon's lack of access to his former patients' medical records is not a result of the delay in indictment but rather that Dr. Dixon no longer works at the medical practice that holds those records. (Dkt. No. 40 at 4–5.) Moreover, Dr. Dixon makes no allegation that these medical records are at risk of loss or destruction. For these reasons, Dr. Dixon has failed to show that he suffered actual prejudice because of the delay in indictment and there is no Fifth Amendment violation that supports dismissing the case with prejudice.

### 2. Federal Rule of Criminal Procedure 48(b)

Federal Rule of Criminal Procedure 48(b) "not only allows a court to dismiss an indictment on constitutional grounds, but it also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude." *United States v. Goodson*, 204 F.3d 508, 513 (4th Cir. 2000) (citing *United States v. Balochi*, 527 F.2d 562, 563–64 (4th Cir. 1976); *Pollard v. United States*, 352 U.S. 354, 361 n.7 (1957); Fed. R. Crim. P. 48(b)). Thus, "[u]nder both Rule 48(b) and its supervisory power, a district court has broad discretion to manage its docket and to impose a wide range of sanctions . . . ." *Id.* at 514. "The sanction of dismissal with prejudice, however, is a harsh remedy for enforcement of those powers, and, indeed, its use becomes a significant event." *Id.* "For in dismissing an indictment with prejudice, the court allows its interest in the orderly administration of justice to override the interests of victims and the public interest in the enforcement of the criminal law." *Id.* (citing *United States v. Derrick*, 163 F.3d 799, 807 (4th Cir. 1998); *United States v. Hattrup*, 763 F.2d 376, 378 (9th Cir. 1985)). "Accordingly, to reconcile these competing interests, it is established that a district court may not, in the management of its docket, exercise its discretion to dismiss an indictment with prejudice, either under Rule 48(b) or under its supervisory power, unless the violation caused prejudice to the defendant or posed a substantial threat thereof." (citing *Derrick*, 163 F.3d at 806; United States v.

Lee, 906 F.2d 117, 120 (4th Cir. 1990); *Hattrup*, 763 F.2d at 378; *United States v. Hasting*, 461 U.S. 499, 505–09 (1983)).

Here, Dr. Dixon argues that it is within the court's broad authority under Rule 48(b) to dismiss his case with prejudice. However, dismissal with prejudice is a harsh sanction that should be used only when the defendant has suffered prejudice or there is a substantial threat of prejudice. As discussed above, Dr. Dixon has not made any specific allegations of prejudice. Rather he speculates that the delay in indictment will prejudice his defense due to the potential loss of memory of witnesses, potential loss of evidence, and potential difficulty in locating witnesses. This is not sufficient for the court to exercise its discretion to use the harsh sanction of dismissal with prejudice.

### 3. Speedy Trial

Dr. Dixon also argues that the court should dismiss this case with prejudice based on violations of his right to a speedy trial under the Sixth Amendment to the United States Constitution and the Speedy Trial Act.

#### a. Sixth Amendment Right to a Speedy Trial

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .'" *United States v. Marion*, 404 U.S. 307, 313 (1971)). "On its face, the protection of the Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution." *Id.* "[E]ither a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge [] engage the particular protections of the speedy trial provision of the Sixth Amendment." *Id.* at 320. However, the Supreme Court has "decline[d] to extend that reach of the amendment to the period prior to arrest." *Id.* "Arrest is a public act that

may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. *Id.*; *see also United States v. Thomas*, 55 F.3d 144, 149 (4th Cir. 1995) (holding that "the combination of the criminal complaint, the arrest warrant, and the federal detainer were sufficient to implicate the speedy trial provision of the Sixth Amendment"); *United States v. Woolfolk*, 399 F.3d 590, 597 (4th Cir. 2005) (concluding that the pre-indictment filing of a detainer, warrant, and complaint implicated the speedy trial provision of the Sixth Amendment).

"If the Sixth Amendment protections apply, [the court] must [then] make 'four separate [i]nquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result.'" *Woolfolk*, 399 F.3d at 597 (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)) (This four part balancing test was originally set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), and is commonly referred to as the Barker balancing test). "In addition to being a factor, the first inquiry is also a threshold requirement, because '[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'" *Id.* (quoting *Doggett*, 505 U.S. at 551–652).

"The Supreme Court has counseled that 'postaccusation delay [is] presumptively prejudicial at least as it approaches one year.'" *Id.* (quoting *Doggett*, 505 U.S. at 652 n. 1).[1] "One year is the 'point at which courts deem the delay unreasonable enough to trigger the *Barker* [i]nquiry.'" *Id.*

---

[1] "The Supreme Court, however, has never offered guidance on what the phrase 'postaccusation delay' encompasses the period from accusation to indictment or accusation to trial. *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005).

Other courts consider eight months to be a threshold point where they delay becomes presumptively prejudicial. *Id.* However, the Fourth Circuit has found no Sixth Amendment violation in cases involving a longer period of delay. *United States v. Grimmond*, 137 F.3d 823, 830 (4th Cir. 1998) (35 months between indictment and arraignment); *Thomas*, 55 F.3d at 149–150 (two and a half years between formal accusation and indictment).

Here, Dixon's Sixth Amendment speedy trial right attached on June 12, 2020, when he was placed on bond and subject to conditions of release. (Dkt. Nos. 17, 18.) The accusation against Dixon outlined in the information combined with the bond conditions that restricted his liberty were sufficient to trigger Dixon's Sixth Amendment right to a speedy trial. At this time, approximately 11 months have passed. Assuming without deciding that this is a presumptively unreasonable delay, the court will weigh the *Barker* factors. First, although the delay is assumed here to be uncommonly long, part of this delay can be attributed to Dixon. On July 2, 2020, Dixon moved to dismiss this case with prejudice based on the statute of limitations, and on July 14, 2020, approximately one month after Dixon's Sixth Amendment rights attached, he moved with the government to exclude speedy trial time until the disposition of his motion to dismiss. On October 26, 2020, after the court denied Dixon's motion to dismiss, the government filed a motion to dismiss without prejudice and, shortly thereafter, Dixon filed a second motion to dismiss. Further delay is reasonably related to the pending disposition of these motions. In addition, although Dixon timely asserted his speedy trial rights on November 2, 2020, in his second motion to dismiss, there is no evidence that he is prejudiced by the delay. For these reasons, the court will deny Dixon's Sixth Amendment claim.

### b. Speedy Trial Act & Dismissal

Regarding the Speedy Trial Act, "the decision to dismiss a case with or without prejudice

for failure to comply with the Speedy Trial Act is within the discretion of the court." (Dkt. No. 36 at 14 (citing *United States v. Taylor*, 487 U.S. 326, 335 (1988)).) In making the decision whether to dismiss with prejudice, "[t]he Supreme Court has held that prejudice to a defendant is [] a relevant factor for the court's consideration." (*Id.* (citing *Taylor*, 487 U.S. at 334).) Moreover, "[t]he Speedy Trial Act provides that '[i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.'" *United States v. Foye*, 36 F. Supp. 2d 329, 335 (S.D.W. Va. 1998). Dr. Dixon primarily relies on *Foye* to advance his argument that the court should dismiss this case due to a violation of the Speedy Trial Act. (*Id.* at 11–13.) Yet, in *Foye*, the court dismissed the case *without* prejudice due to Speedy Trial Act violations. 36 F. Supp. 2d at 335.

Here, the Speedy Trial Act does not require the court to dismiss this case with prejudice. Even if Dr. Dixon could establish a violation of the Speedy Trial Act, such a violation does not require dismissal with prejudice. As discussed above, Dr. Dixon has not shown beyond speculation that he has suffered prejudice from the delay in indictment. Further, Dr. Dixon concedes that the seriousness of the charge against him weighs against dismissal with prejudice. (Dkt. No. 36 at 14; Dkt. No. 40 at 8.) For these reasons, Dr. Dixon's speedy trial arguments do not persuade the court to dismiss this case with prejudice.

### 4. Federal Rule of Criminal Procedure 48(a)

Although Federal Rule of Criminal Procedure 48(a) "confers discretion on the district court to deny the government's motion to dismiss a charging document, this discretion is not broad." *Goodson*, 204 F.3d at 512 (citing *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983) ("[T]he

10

trial court has little discretion in considering a government motion to dismiss made pursuant to [Rule 48(a)]")). "Indeed, the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." *Id.* (citing *Rinaldi v. United States*, 434 U.S. 22, 30 (1977); *United States v. Smith*, 55 F.3d 157, 159 (4th Cir.1995); *Perate*, 719 F.2d at 710 (stating that a Rule 48(a) motion must be granted "absent a finding of bad faith or disservice to the public interest")).

Here, there is no indication that granting the government's motion would be clearly contrary to the public interest. In fact, given the severity of the charges against Dr. Dixon there may be a public interest in dismissing this case without prejudice. In addition, Dr. Dixon has not alleged that the government's motion was made in bad faith and the court is not aware of any evidence of bad faith. Therefore, the court will grant the government's motion to dismiss the case without prejudice.

**B. Speedy Trial Act Calculations**

Pursuant to the Speedy Trial Act, an indictment must be filed within 30 days from date on which an individual was arrested or served a summons and the trial of a defendant must begin within 70 days of the filing of an information or indictment or from the date of a defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(b)–(c). "If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days." *Id.*

The Speedy Trial Act also provides for certain exceptions to these time periods. The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense

must commence:

> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
> (E) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure; . . . [and]
> (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court. 18 U.S.C. § 3161(h)(1).

In addition, "[a]ny period of delay resulting from a continuance [shall be excluded] . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7).

The exception provided for delays that result from the transfer of a case extends to delays that result from an intra-district reassignment of a case. For example, in *United States v. Cheek*, 3 F.3d 1057, 1066 (7th Cir. 1993), the court excluded from speedy trial time "16 days relating to the intradistrict transfer of Cheek's case from one judge to another." *United States v. Barnwell*, 617 F. Supp. 2d 538, 550 (E.D. Mich. 2008). On appeal, the Seventh Circuit explained that the statutory language of 18 U.S.C. § 3161(h)(1)(E) is "broad enough on its face to cover delays caused by such intradistrict administrative transfer procedures as those provided by [] local court rules." *Id.* (citing *Cheek*, 3 F.3d at 1066). Similarly, in *United States v. Glasser*, 773 F.2d 1553, 1557 (11th Cir. 1985), Glasser argued that intra-district transfers made pursuant to a local rule are not excludable under 18 U.S.C. § 3161(h)(1)(E). *Barnwell*, 617 F. Supp. 2d at 553. The Eleventh Circuit disagreed, reading "subsection (h)(1)([E]) as . . . broad enough on its face to cover delays by proceedings relating to the intra-district transfer of a case." *Glasser*, 773 F.2d at 1556.

Here, the government seeks to exclude from speedy trial calculations: (1) the period from when defendant's first motion to dismiss was taken under advisement by the court until it was disposed of by the court; and (2) the period between the filing and disposition of all currently pending motions. (Dkt. No. 33 at 1; Dkt. No. 49 at 3.)

**1. Time After Defendant's First Motion to Dismiss**

Defendant filed his first motion to dismiss on July 2, 2020. (Dkt. No. 26.) Pursuant to 18 U.S.C. § 3161(h)(1)(D), the court granted a joint motion by the parties to exclude from speedy trial time "the period of time beginning July 2, 2020 until the hearing on or prompt disposition of the motion [to dismiss]." (Dkt. No. 29.) On September 16, 2020, the court held a hearing on defendant's motion to dismiss and took the motion under advisement. (Dkt. No. 32.) On October 26, 2020, the court issued an opinion and order denying the motion to dismiss. (Dkt. No. 34.) At a minimum, the time from July 2, 2020, through September 16, 2020, is excluded by court order (Dkt. No. 29) pursuant to 18 U.S.C. § 3161(h)(1)(D) and the time from September 16, 2020, through October 16, 2020, is excluded pursuant to 18 U.S.C. § 3161(h)(1)(H). At issue is whether the period from October 16, 2020, through the court's disposition of the motion on October 26, 2020, is also excluded.

Although 18 U.S.C. § 3161(h)(1)(D) provides that the delay resulting from any pretrial motion should be excluded "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," it does not explain the outer bounds of such an exclusion. In other words, it is not clear whether the exclusion period ends upon the occurrence of the hearing or the disposition of the motion if, as in this case, the hearing concludes before disposition. The Fourth Circuit has reasoned that " [i]f the court does not dispose of the motion during the hearing, the [Speedy Trial Act] permits the exclusion of an additional period-not to

13

exceed 30 days-during which the court holds the motion under advisement and continuing through the day the order ruling on the motion is entered." *United States v. Stoudenmire*, 74 F.3d 60, 63 (4th Cir. 1996) (citing *United States v. Parker*, 30 F.3d 542 (4th Cir. 1994)). Applying the logic from *Stoudenmire*, the 10 days from October 16, 2020, until October 26, 2020, should not be excluded for speedy trial calculations because the court had already held the motion to dismiss under advisement for 30 days after the hearing.

Nevertheless, the government argues that the court should exclude the 10 days from October 16, 2020, through October 26, 2020, based upon § 3161(h)(7) because the ends of justice outweigh the needs of the public and defendant in a speedy trial. (Dkt. No. 33 at 1–2.) However, 18 U.S.C. § 3161(h)(7) only applies to delays resulting from a continuance. It does not appear that the court issued any continuance following the September hearing on the motion to dismiss. For this reason, 18 U.S.C. § 3161(h)(7) is inapplicable to the delay in disposition of the motion to dismiss following the September hearing on the matter. Therefore, the court will not exclude the 10 days from October 16, 2020, through October 26, 2020, from speedy trial calculations based on the reasoning in the government's first motion to dismiss.[2]

**2. Time After Currently Pending Motions**

The government's first motion for speedy trial time to be excluded and both parties' motions to dismiss are pending before the court. (Dkt. Nos. 33, 35, 36.) Judge Moon held a hearing on these motions on January 26, 2021, at which time he took the motions under advisement. (Dkt. No. 45.) On February 25, 2021, 30 days later, the case was reassigned to the undersigned. The same

---

[2] Although the court will not exclude the period from October 16, 2020, through October 26, 2020, as argued in the government's first motion to exclude speedy trial time (Dkt. No. 33), the court will exclude time after October 16, 2020, based on the arguments in the government's second motion to exclude speedy trial time (Dkt. No. 49).

day, the government filed its second motion to exclude speedy trial time, in part due to the additional delay that resulted from the reassignment. (Dkt. No. 49.) On April 7, 2021, the undersigned held a hearing on these pending motions and took the motions under advisement. (Dkt. No. 72.) The government requests that the court exclude from speedy trial calculations the time between the filing of all currently pending motions[3] and the disposition of these motions. (Dkt. No. 49 at 2–3.)

Pursuant to 18 U.S.C. § 3161(h)(1)(D), the court will exclude the period of time from the filing of the pending motions (the first of these pending motions, the government's first motion to exclude speedy trial time, was filed on October 16, 2020) until Judge Moon's hearing on the motions on January 26, 2021. In addition, pursuant to 18 U.S.C. § 3161(h)(1)(H), the court will exclude the period of time from January 26, 2021, until February 25, 2021, during which Judge Moon took the motions under advisement. Further, pursuant to 18 U.S.C. § 3161(h)(1)(E), the court will exclude the delay between February 25, 2021, and April 7, 2021, which resulted from the reassignment of this case from Judge Moon to the undersigned. Finally, the court will also exclude the time following April 7, 2021, until the issuance of this opinion on May 7, 2021, during which the court had taken the motions under advisement. In total, the court will exclude from speedy trial calculations the time between October 16, 2020,[4] and May 7, 2021,[5] granting the government's

---

[3] These include the government's two motions to exclude speedy trial time (Dkt. Nos. 33, 49) and both parties' motions to dismiss (Dkt. Nos. 35, 36).

[4] When the government filed its first motion to exclude speedy trial time (Dkt. No. 33), the earliest filed of the currently pending motions.

[5] When the court issued a decision on the government's first motion to exclude speedy trial time, as well as all other pending motions.

second motion to exclude speedy trial time.[6]

## C. Disclosure of Grand Jury Information

"Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.'" *Press-Enter. Co. v. Superior Ct. of California for Riverside Cty.*, 478 U.S. 1, 8–9 (1986) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979)). Federal Rule of Criminal Procedure 6(e)(2) requires the secrecy of grand jury information and provides that an "attorney for the government" "must not disclose a matter occurring before the grand jury."

However, "it has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings." *Douglas Oil Co.*, 441 U.S. at 220) (citing *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 233–234 (1940)). "Indeed, recognition of the occasional need for litigants to have access to grand jury transcripts led to the [exceptions] in Fed. Rule Crim. Proc. 6(e)[(3)]." *Id.* "[T]he standard for determining when the traditional secrecy of the grand jury may be broken [is as follows]: Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id.* "[D]isclosure is appropriate only in those cases where the need for it outweighs the public interest

---

[6] The 70-day speedy trial clock first started to run on June 13, 2020, the day after Dr. Dixon made his initial appearance before Judge Ballou on the charges in this case. (Dkt. No. 14.) The speedy trial clock then ran until June 30, 2020, when Dr. Dixon filed a motion to substitute his attorney. (Dkt. No. 22.) The clock stopped during the pendency of the motion to substitute attorney until its resolution on July 2, 2020. (Dkt. No. 23.) Further, the time from July 2, 2020, through present is excluded as described above. Therefore, a total of 17 days have elapsed on the speedy trial clock for the purposes of 18 U.S.C. § 3161(c)(1).

in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id.*

Here, Dr. Dixon argues that he is "entitled to obtain the information which was the subject of the discussions between the Court and the Government at the hearing on February 25, 2021, as well as the information which the AUSA apparently intended to share with the Court ex parte, in order to assess whether whatever resulted in Judge Moon's withdrawal from this case prejudiced Dr. Dixon in any way or resulted in a deprivation of due process." (Dkt. No. 65 at 19.) Although Dr. Dixon concedes that he "has no doubt that Judge Moon acted appropriately in withdrawing" from the case, he argues that he is nevertheless prejudiced by not knowing the reason for Judge Moon's recusal. (*Id.* at 18.) The government assures the court that it had no ex parte communications with Judge Moon regarding the subject of his recusal and that the information Dr. Dixon seeks pertains to an ongoing grand jury matter. (Dkt. No. 69 at 11–12.)

Because Dr. Dixon has not shown a need for disclosure that is greater than the need for continued secrecy, the court will deny his request for disclosure of grand jury information. The need for secrecy is particularly great in this case because the information Dr. Dixon seeks relates to an ongoing grand jury matter. In addition, Dr. Dixon has not articulated a significant need for disclosure of the grand jury information at issue. His primary argument is that Judge Moon and the government had knowledge that he did not share, putting him at a disadvantage in his defense. However, the undersigned judge now presiding over this case has no knowledge of such information and is not aware of subject matter regarding Judge Moon's recusal. Following reassignment of the case, all parties have had an opportunity to reargue pending motions, which further avoids any risk of prejudice. For these reasons, the court will deny Dr. Dixon's motion for disclosure.

## III.  CONCLUSION

For the aforementioned reasons, the court will grant the government's motion to dismiss without prejudice (Dkt. No. 35), deny the defendant's motion to dismiss with prejudice (Dkt. No. 36), deny the government's first motion to exclude speedy trial time (Dkt. No. 33), grant the government's second motion to exclude speedy trial time (Dkt. No. 49), and deny defendant's motion for disclosure of information (Dkt. No. 65).

Entered: May 7, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge